UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRUCE ALAN HOWARD,

        Petitioner,

                                          CASE NO. 08-10222

v.

                                          PAUL D. BORMAN

MILLICENT WARREN,               UNITED STATES DISTRICT JUDGE

        Respondent.

_____/

**OPINION AND ORDER DENYING THE HABEAS PETITION
AND DENYING A CERTIFICATE OF APPEALABILITY**

        This matter is pending before the Court on petitioner Bruce Alan Howard's habeas corpus petition under 28 U.S.C. § 2254. Petitioner is challenging his Wayne County conviction and sentence of life imprisonment for armed robbery. Petitioner alleges that he is in custody in violation of his rights under the Fourth, Sixth, and Fourteenth Amendments to the United States Constitution. The Court has concluded from a review of the record that Petitioner's claims do not warrant granting the writ of habeas corpus. Therefore, the habeas petition will be denied.

**I. BACKGROUND**

        **A. The State Court Proceedings**

        The record indicates that a series of robberies occurred on Dix and Fort Streets in Southwest Detroit during December of 1992 and January of 1993. This case involves the robbery of eleven people at the Boomerang Bar, 403 Dix Street, on January 24, 1993. The prosecution's theory was that Petitioner directly robbed the people or aided and abetted his co-defendants in robbing the establishment and its patrons. Petitioner's co-defendants were Joseph

Rosenthal, Stanley Battle, Arlander Bunn, and Johnny Ruffin.[1] Petitioner was tried jointly with Stanley Battle, but before a separate jury, in the former Recorder's Court for the City of Detroit.

The evidence at trial established that four or five masked men entered the Boomerang Bar at approximately 1:00 a.m. on January 24, 1993. The men fired some gunshots into the ceiling and robbed the occupants of money, purses, wallets, and jewelry. The robbers also took money from the cash register and unopened bottles of liquor. They left the premises after ordering everyone to go into a restroom.

On the following day, the police arrested Joseph Rosenthal, Johnny Ruffin, and Arlando Bunn after observing the three men running from a bar on Dix Street at approximately 12:45 a.m. Rosenthal made a statement to the police in which he implicated himself, Gary Ruffin, Stanley Battle, and a man named "Bruce" in a robbery that occurred during the previous month. Rosenthal pointed out the homes of Stanley Battle and "Bruce" to the police, who obtained a search warrant for Petitioner's home. The police executed the warrant on January 26, 1993, and arrested Petitioner at the same time. During a subsequent interrogation by the police, Petitioner admitted that he, Joseph Rosenthal, Stanley Battle, Johnny Ruffin, and Arlander Bunn had participated in the robbery and that he had taken money from the register.

Stanley Battle was arrested at his place of employment. He was handcuffed and placed in the back seat of the squad car. When the officers and Battle arrived at the police station, Battle exited the squad car. An officer located a woman's ring in the back seat where Battle had been seated. Battle was brought inside where the police found another woman's ring in his

---

[1] The spelling of these names varies in the record and in court documents. Rosenthal's name is spelled Rosenthall in places, Johnny Ruffin is sometimes referred to as Gary Ruffin, and Arlando Bunn is sometimes referred to as Orlando Bunn.

pocket. Betty Yates testified at trial that the two rings were her engagement and wedding rings.

Another victim, Linda Riopelle, identified co-defendant Stanley Battle in a pretrial line-up, and Jeffrey Johnson identified Petitioner in the line-up. Although the robbers had worn ski masks, Ms. Riopelle testified at trial that Stanley Battle's mask had large holes in it and that she was able to see much of his face. Mr. Johnson testified that Petitioner was not wearing his mask when he ushered the occupants of the bar into the restroom. Petitioner's only witness was his mother, who testified that Petitioner was at home with her on the night of the crime.

On April 14, 1994, Petitioner's jury found him guilty of eleven counts of armed robbery, MICH. COMP. LAWS § 750.529. The trial court sentenced Petitioner as a habitual offender to eleven consecutive terms of life imprisonment. The written judgment of sentence, however, states that the terms are concurrent. The Michigan Court of Appeals affirmed Petitioner's convictions in an unpublished *per curiam* opinion, *see People v. Howard*, No. 175615 (Mich. Ct. App. July 16 1996), and on March 28, 1997, the Michigan Supreme Court denied leave to appeal. *See People v. Howard*, 454 Mich. 885 (1997) (table).

Petitioner filed several post-conviction motions. In a motion for new trial, he argued that trial counsel was ineffective for failing to challenge an illegal search and arrest. The trial court denied Petitioner's motions, and both appellate courts denied leave to appeal the trial court's decision for failure to establish entitlement to relief under Michigan Court Rule 6.508(D). *See People v. Howard*, 259953 (Mich. Ct. App. June 24, 2005); *People v. Howard*, 474 Mich. 939 (2005) (table).

Petitioner also filed a motion for relief from judgment, which the trial court denied. The Michigan Court of Appeals denied leave to appeal the trial court's decision on the ground that

3

Petitioner had failed to establish entitlement to relief under Michigan Court Rule 6.508(D). *See People v. Howard*, No. 277843 (Mich. Ct. App. Sept. 28, 2007). On January 8, 2008, the Michigan Supreme Court denied leave to appeal after concluding that Petitioner's motion for relief from judgment was a successive motion, which was prohibited by Michigan Court Rule 6.502(G). *See People v. Howard*, 480 Mich. 1013 (2008) (table)

### B. The Federal Court Proceedings

Petitioner signed and dated his habeas corpus petition on January 11, 2008. The habeas petition alleges that (1) Petitioner's trial and appellate attorneys were ineffective, (2) he was arrested in his home without an arrest warrant, (3) the state sentencing guidelines were inaccurately scored, (4) the prosecution failed to establish probable cause at the preliminary examination, and (5) he is innocent. Respondent argued in a motion for summary judgment that the habeas petition was barred from review by the statute of limitations. The Court initially agreed and dismissed the habeas petition as time-barred, because Petitioner filed his habeas petition over nine years after the statute of limitations expired and it appeared that none of his post-conviction motions tolled the statute of limitations. On November 13, 2009, the United States Court of Appeals for the Sixth Circuit affirmed this Court's order and judgment dismissing Petitioner's case.

Petitioner subsequently moved for rehearing in the Court of Appeals and for relief from judgment in this Court. He maintained that the trial court's docket had been corrected to show that he filed a post-conviction motion which tolled the statute of limitations. The Court granted Petitioner's motion for relief from judgment and re-opened this case. The Court of Appeals subsequently remanded Petitioner's case to this Court for a determination of whether dismissal

4

was still appropriate in light of the new evidence.

Meanwhile, Respondent filed an answer to the petition in which she argued through counsel that Petitioner's claims lacked merit, were procedurally defaulted, or were not cognizable on habeas review. Neither the statute of limitations, nor the doctrine of procedural default, are jurisdictional limitations. *Holland v. Florida*, __ U.S. __, __, 130 S. Ct. 2549, 2560 (2010) (quoting *Day v. McDonough*, 547 U.S. 198, 205 (2006)) (the statute of limitations); *Pudelski v. Wilson*, 576 F.3d 595, 606 (6th Cir. 2009) (procedural default), *cert. denied*, __ U.S. __, 130 S. Ct. 3274 (2010)). The Court therefore will proceed to adjudicate the merits of Petitioner's claims, using the following standard of review.

## II. STANDARD OF REVIEW

A habeas petitioner is entitled to the writ of habeas corpus only if the state court's adjudication of his claims on the merits

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state-court decision unreasonably applies the law of [the Supreme

5

Court] to the facts of a prisoner's case." *Id*. at 409. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, __ U.S. __, __, 131 S. Ct. 770, 786 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

### III. DISCUSSION

#### A. Trial Counsel

The first and second habeas claims allege that Petitioner's trial attorney was ineffective for failing to challenge Petitioner's arrest and the warrant to search his home. Petitioner contends that the affidavit supporting the search warrant was invalid and that he was arrested inside his home absent a complaint or arrest warrant.

##### 1. *Strickland v. Washington; Kimmelman v. Morrison*

To prevail on a claim of ineffective assistance of counsel, a habeas petitioner must demonstrate "that counsel's performance was deficient" and "that the deficient performance prejudiced the defense." *Strickland v. Washington,* 466 U.S. 668, 687 (1984). The failure to file a motion to suppress evidence is not *per se* ineffective assistance of counsel. *Kimmelman v. Morrison*, 477 U.S. 365, 384 (1986). "Where defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must . . . prove that his Fourth Amendment claim is meritorious and . . . a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice." *Id*. at 375.

##### 2. The Search Warrant

Petitioner contends that the affidavit supporting the search warrant in his case contained a false statement and was based on mere belief or suspicion. Petitioner also claims that the affidavit failed to (1) establish probable cause, (2) set forth any information regarding the items sought, and (3) establish a nexus between the place to be searched and the evidence sought.

### a. Clearly Established Federal Law

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV.

> It is established law that a warrant affidavit must set forth particular facts and circumstances underlying the existence of probable cause, so as to allow the magistrate to make an independent evaluation of the matter. If an informant's tip is the source of information, the affidavit must recite "some of the underlying circumstances from which the informant concluded" that relevant evidence might be discovered and "some of the underlying circumstances from which the officer concluded that the informant, whose identity need not be disclosed, . . . was 'credible' or his information 'reliable.'" Because it is the magistrate who must determine independently whether there is probable cause, it would be an unthinkable imposition upon his authority if a warrant affidavit, revealed after the fact to contain a deliberately or reckless false statement, were to stand beyond impeachment.

*Franks v. Delaware*, 438 U.S. 154, 165 (1978) (citations omitted). In *Illinois v. Gates*, 462 U.S. 213 (1983), the Supreme Court

> held that the Fourth Amendment's requirement of probable cause for the issuance of a warrant is to be applied, not according to a fixed and rigid formula, but rather in the light of the "totality of the circumstances" made known to the magistrate. [The Supreme Court] also emphasized that the task of a reviewing court is not to conduct a de novo determination of probable cause, but only to determine whether there is substantial evidence in the record supporting the magistrate's decision to issue the warrant.

*Massachusetts v. Upton*, 466 U.S. 727, 728 (1984). The magistrate's action "cannot be a mere ratification of the bare conclusions of others." *Gates*, 462 U.S. at 239.

### b. Application

The affidavit supporting the search warrant in this case states that an armed robbery occurred at the Milo Lounge on Dix Street on December 23, 1992. A person seated at a table in the bar was killed. Additional robberies occurred at 3442 W. Fort Street on January 10, 1993, and at 403 Dix Street on January 24, 1993. On January 25, 1993, the police observed three men running away from an establishment at 9623 W. Fort Street. The men got in a car and sped away, pursued by the police, who eventually stopped the three men. The men fit the description of the men who were wanted for the robbery of the bar at 403 Dix Street on the previous day. They were identified as Joseph Rosenthal, Johnny Ruffin, and Arlando Bunn. Guns taken from their car were identified as weapons used in the robbery at 403 Dix Street on January 24, 1993, and at 3442 W. Fort Street on January 10, 1993. The caliber of one gun was the same as the caliber of the bullet removed from the deceased victim of the Milo Lounge robbery. Rosenthal informed the police that he drove the car used in the Milo Lounge robbery on December 23, 1992, and that Gary Ruffin, Stanley Battle, and a man named "Bruce" had been with him. Rosenthal pointed out "Bruce's" home to the police.

The affidavit sought permission to search "Bruce's" home at 2177 Deacon Street in Detroit. The affidavit set forth specific information regarding the items sought: guns or ammunition, papers related to residence or ownership of the home, photographs purporting to depict "Bruce," and any other indicia of a crime.

The magistrate could have inferred from the totality of the circumstances described in the affidavit that a man named "Bruce," whom Joseph Rosenthal mentioned in his statement to the police and whose residence was pointed out to the police, was involved in one or more robberies

with Rosenthal, Stanley Battle, and Johnny Ruffin. Although Rosenthal later recanted the information that he provided to the police about Petitioner, *see* Dkt. #8, at 25-31 (Rosenthal's affidavits dated October 14, 2005, and April 20, 2006), the information that he initially provided to the police purported to be based on personal knowledge. And the fact that he implicated himself in his statement to the police lends credibility to his statement. His statement to the police established probable cause to believe that the person named Bruce, who resided at 2177 Deacon Street, had committed a crime.

Although the police knew only that a man named "Bruce" lived at the place to be searched, "[s]earch warrants are not directed at persons; they authorize the search of 'place[s]' and the seizure of 'things,' and as a constitutional matter they need not even name the person from whom the things will be seized." *Zurcher v. Stanford Daily*, 436 U.S. 547, 555 (1978) (citing *United States v. Kahn*, 415 U.S. 143, 155 n. 15 (1974)).

In conclusion, there was a substantial basis for the magistrate's decision to issue the warrant. Consequently, the search warrant was valid, and defense counsel was not ineffective for failing to challenge it.

### 3. The Arrest

Petitioner alleges that his arrest was illegal because he was arrested in his home without a warrant or complaint. "[T]he arrest of a person is 'quintessentially a seizure,'" and "[i]t is a 'basic principle of Fourth Amendment law' that searches and seizures inside a home without a warrant are presumptively unreasonable." *Payton v. New York*, 445 U.S. 573, 585, 586 (1980). Thus, absent exigent circumstances, the police may not make a warrantless and nonconsensual entry into a suspect's home to make a routine felony arrest. *Id.* at 576, 590.

> *Payton* did not hold, however, that an arrest warrant is the exclusive basis upon which police may arrest a suspect in her home. . . .   If anything, *Payton* suggests that officers in possession of a search warrant have gone above and beyond what the Fourth Amendment requires before they may arrest a resident in her home.

*Russell v. Harms*, 397 F.3d 458, 466 (7th Cir. 2005).  Therefore, a police officer "executing a valid search warrant may arrest a resident found within the permissible scope of that search if the officers have probable cause to believe that the resident has committed a crime." *Id*.; *see also United States v. Winchenbach*, 197 F.3d 548, 554 (1st Cir. 1999) (explaining that, if "the police have gained lawful entry to an individual's home based on a valid search warrant, they may arrest the individual before commencing the search, provided that they have probable cause to do so").          Stated differently, "[n]o arrest warrant is needed 'while officers [are] legally on the premises pursuant to a search warrant.'" *Mahlberg v. Mentzer*, 968 F.2d 772, 775 (8th Cir. 1992) (quoting *Jones v. City of Denver*, 854 F.2d 1206, 1209 (10th Cir. 1988)).  The reason for this conclusion is that "the 'physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed.'" *Payton*, 445 U.S. at 585 (quoting *United States v. United States District Court for the Eastern District of Michigan, Southern Division*, 407 U.S. 297, 313 (1972)).  "[A]n entry to arrest and an entry to search for and to seize property implicate the same interest in preserving the privacy and the sanctity of the home, and justify the same level of constitutional protection." *Id*. at 588 (explaining Circuit Judge Leventhal's conclusion in *Dorman v. United States*, 435 F.2d 385 (1970)).  "The impartial determination that supports the issuance of a *search* warrant justifies a greater intrusion than that supporting the issuance of an arrest warrant.  Thus, once an officer has procured a *search* warrant, the privacy interests that led to the imposition of an *arrest* warrant requirement in *Payton* have been protected." *Jones,* 854 F.2d at 1209.

The police officers who searched Petitioner's home had a valid search warrant and probable cause to believe that Petitioner had committed an armed robbery. Therefore, Petitioner's arrest was legal, and defense counsel was not ineffective for failing to challenge Petitioner's arrest.

### B. The Fourth Amendment Claim

The third claim alleges that Petitioner was arrested in his home without a complaint or arrest warrant. This claim is based on the Fourth Amendment, as opposed to the Sixth Amendment, which forms the basis for Petitioner's first two claims.

"[T]he Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial" if the State provided an opportunity for "full and fair litigation" of a Fourth Amendment claim. *Stone v. Powell*, 428 U.S. 465, 482 (1976). For a "full and fair" opportunity to have existed, the state must have provided a mechanism for raising the claim and presentation of the claim must not have been frustrated by a failure of that mechanism. *Gilbert v. Parke*, 763 F.2d 821, 823 (6th Cir. 1985) (citing *Riley v. Gray*, 674 F.2d 522, 526 (6th Cir. 1982)).

Petitioner implies that he did not have a full and fair opportunity to raise his Fourth Amendment claim in state court. He contends that, when he presented his Fourth Amendment claim to his appellate attorney in the form of a motion to remand, his attorney returned the motion and stated that the Michigan Court of Appeals had already scheduled oral arguments and would not allow the motion.

Petitioner could have raised his Fourth Amendment claim in a motion to suppress

11

evidence before or even during trial.  *People v. Ferguson*, 376 Mich. 90, 93-95 (1965). Therefore, he had a full and fair opportunity to present his claim to the state court and that is all *Stone v. Powell* requires.  *Jennings v. Rees*, 800 F.2d 72, 77 (6th Cir. 1986).  It was up to him and his attorney "to decide what use, if any, is to be made of the opportunity."  *Id*.

The Court concludes that presentation of Petitioner's Fourth Amendment claim was not frustrated by a failure of the state mechanism for raising the claim.  Therefore, Petitioner's Fourth Amendment claim is not cognizable on habeas corpus review.

### C.  The Sentence

The fourth habeas claim challenges the scoring of the Michigan sentencing guidelines. This claim lacks merit because "[a] state court's alleged misinterpretation of state sentencing guidelines . . . is a matter of state concern only," *Howard v. White*, 76 F. App'x 52, 53 (6th Cir. 2003), and "federal habeas corpus relief does not lie for errors of state law."  *Lewis v. Jeffers,* 497 U.S. 764, 780 (1990).  "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  *Estelle v. McGuire*, 502 U.S. 62, 68 (1991) (citing 28 U.S.C. § 2241; *Rose v. Hodges*, 423 U.S. 19, 21 (1975) (per curiam )).  Petitioner's challenge to the trial court's allegedly improper interpretation of the state's sentencing guidelines is not cognizable on federal habeas corpus review because it is a state law claim.  *Whitfield v. Martin*, 157 F. Supp. 2d 758, 762 (E.D. Mich. 2001) (citing *Cook v. Stegall*, 56 F. Supp. 2d 788, 797 (E.D. Mich. 1999), and *Thomas v. Foltz*, 654 F. Supp. 105, 106-07 (E.D. Mich. 1987)).

### D.  The Preliminary Examination

The fifth habeas claim alleges that the State failed to establish probable cause at the

preliminary examination. Petitioner contends that the only evidence introduced against him at the preliminary examination was his statement to the police in which he supposedly admitted to committing a robbery on "12-4-93," which was *after* the preliminary examination.

The transcript of the testimony in question states that the robbery occurred on 12-4-93. The robbery actually occurred on 1-24-93. Thus, it appears that a mere error occurred in the transcript. The first hyphen should have been placed between the one and the two instead of between the two and the four.

In any event, Petitioner had no constitutional right to a preliminary examination. *Gerstein v. Pugh*, 420 U.S. 103, 123, 125 n.26 (1975); *Dillard v. Bomar*, 342 F.2d 789, 790 (6th Cir. 1965). Consequently, the state district court's determination that the evidence was sufficient to transfer jurisdiction to the state circuit court for trial is not a basis for habeas corpus relief. *See Tegeler v. Renico*, 253 F. App'x 521, 525-26 (6th Cir. 2007) (finding no constitutional violation where the petitioner was convicted of premeditated murder even though the bindover order did not list that offense as a charge).

### E. Appellate Counsel

Petitioner alleges that his appellate attorney failed to appear at oral arguments and that counsel's absence amounted to ineffective assistance of counsel because Petitioner needed an advocate for his Fourth Amendment challenge to the search warrant. To prevail on his claim, Petitioner must demonstrate that his attorney's performance was deficient and that the deficient performance prejudiced the defense. *Strickland,* 466 U.S. at 687; *Smith v. Robbins*, 528 U.S. 259, 285 (2000) (stating that the proper standard for evaluating the petitioner's claim about appellate counsel is that enunciated in *Strickland*).

13

"Oral argument on appeal is not required by the Constitution in all cases; nor is it necessarily essential to a fair hearing. This is particularly true when 'legal arguments only are involved, and the material issues have been briefed.'" *United States v. Birtle*, 792 F.2d 846, 848 (9th Cir. 1986) (citations omitted).

Petitioner's attorney raised three issues on appeal, and he briefed the issues. Petitioner has not complained about the quality of his attorney's brief, and his Fourth Amendment claim lacks merit. For these reasons, Petitioner was not prejudiced by the submission of his case on the briefs and by his attorney's failure to appear at oral arguments. His claim lacks merit.

### F. Actual Innocence

The seventh and final claim alleges that Petitioner is actually innocent of the crimes for which he was convicted. "[A] claim of 'actual innocence' is not itself a constitutional claim . . . ," *Herrera v. Collins,* 506 U.S. 390, 404 (1993), and the Supreme Court has "described the threshold for any hypothetical freestanding innocence claim as 'extraordinarily high.'" *House v. Bell*, 547 U.S. 518, 555 (2006) (quoting *Herrera*, 506 U.S. at 417). A habeas petitioner must show that, more likely than not, no reasonable juror would have convicted him in light of new evidence. *Ross v. Berghuis*, 417 F.3d 552, 556 (6th Cir. 2005) (citing *Schlup v. Delo*, 513 U.S. 298, 327 (1995)). Stated differently, the petitioner must show that, "in light of the new evidence . . . , more likely than not any reasonable juror would have reasonable doubt." *House*, 547 U.S. at 538.

The only new evidence that Petitioner has presented to the Court is his own self-serving affidavit, which states that he is not guilty, and three of his co-defendants' affidavits. Arlando Bunn and Johnny Ruffin state in their affidavits that Petitioner was not arrested with them and

14

that a man who was initially arrested as a suspect resembles Petitioner, but was not placed in the line-up. Joseph Rosenthal states in his affidavit that he did not incriminate Petitioner in his statement to the police, nor point out Petitioner's home to the police. Given the strength of the evidence against Petitioner, including his own admission that he participated in the robbery of the Boomerang Bar, a reasonable juror in all likelihood would have convicted Petitioner in spite of the new evidence. Thus, this is not one of those extraordinary cases in which a claim of actual innocence warrants a new trial.

## IV. CONCLUSION

The state courts' rejection of Petitioner's claims did not result in decisions that were contrary to federal law, an unreasonable application of federal law, or an unreasonable determination of the facts. Accordingly, the petition for a writ of habeas corpus [Dkt. #1] is **DENIED**.

## V. CERTIFICATE OF APPEALABILITY

"[A] prisoner seeking postconviction relief under 28 U.S.C. § 2254 has no automatic right to appeal a district court's denial or dismissal of the petition. Instead, [the] petitioner must first seek and obtain a [certificate of appealability.]" *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Reasonable jurists would not find the Court's resolution of Petitioner's claims debatable, nor conclude that the issues deserve encouragement to proceed further. Accordingly, the Court **DECLINES** to issue a certificate of appealability. Petitioner nevertheless may proceed *in forma pauperis* on appeal without further authorization because he was permitted to proceed *in forma pauperis* in the District Court. Fed. R. App. P. 24(a)(3).

S/Paul D. Borman
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated: April 28, 2011

CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means and upon

**Bruce Howard**
233473
G. ROBERT COTTON CORRECTIONAL FACILITY
3500 N. ELM ROAD
JACKSON, MI 49201

by U.S. Mail on April 28, 2011.

S/Denise Goodine
Case Manager

16